## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 16 2015, 10:02 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Joshua D. Hershberger | R. Patrick Magrath |
| Hershberger Law Office | Alcorn Sage Schwartz & Magrath, LLP |
| Madison, Indiana | Madison, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| In the Matter of the Adoption of B.R. (Minor Child) | March 16, 2015 |
| | Court of Appeals Case No. 72A04-1408-AD-372 |
| R.R. (Father), | |
| *Appellant-Respondent,* | Appeal from the Scott Circuit Court |
| | The Honorable Roger L. Duvall, Judge |
| v. | Case No. 72C01-1010-AD-30 |
| D.S. and V.S., | |
| *Appellees-Petitioners* | |

**Crone, Judge.**

## Case Summary

[1]    R.R. ("Father") appeals the trial court's order granting the petition filed by V.S. ("Grandmother") to adopt B.R., a quadriplegic fourteen-year-old for whom Grandmother had been guardian for most of his life.  Father contends that the

trial court erred in concluding that his consent to the adoption is not required and that the adoption is in B.R.'s best interest. Finding no error, we affirm.

## Facts and Procedural History[1]

Grandmother and her sister, D.S., filed a petition to adopt B.R. in October 2010. The trial court held a hearing on the petition in February and April 2014. In an order dated June 30, 2014, the trial court made the following relevant findings of fact and conclusions thereon:[2]

> 1. B.R. was born on February 1, 2000 one of three children to the marriage of the Father and the Mother, T.R. (Mother).
>
> 2. The Court takes notice of the fact that the siblings of B.R. are wards of the Court in child in need of services cases pending since 2009 and are not parties to this case.
>
> 3. The Mother has consented to this adoption.
>
> 4. In April, 2001, Mother and B.R. were in an automobile accident that left B.R. a quadriplegic. The accident resulted in [] 7 weeks of hospitalization of B.R. followed by 4 ½ months at St. Vincent Rehab. The child returned to the home of his parents on September 22, 2001.
>
> 5. The Indiana Department of Child Services (DCS) removed B.R. in February 2003 from the home of his parents for failure to thrive.
>
> 6. The Father and Mother eventually separated in August 2004, and dissolution was granted on May 17, 2005 in Johnson County, Indiana.

---

[1] We remind Father that an appellant's statement of facts "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed." Ind. Appellate Rule 46(A)(6)(b). Also, Indiana Appellate Rule 43(C) states that an appellate brief "may be copied by any copying process that produces a distinct black image on white paper." The text in Father's brief is indistinct and difficult to read.

[2] We replace family members' names with initials or descriptors where appropriate.

7. The Father was granted the custody of B.R. and his two siblings. In 2005 the Father was incarcerated on charges of criminal confinement and domestic battery. B.R. was placed by DCS with Grandmother, a great grandmother, who has had physical custody since April 2005.

8. [Grandmother filed a petition for guardianship of B.R. in September, 2005.] A temporary order on the guardianship was entered September 7, 2005 and the guardianship order was entered on May 11, 2006. The Father was awarded parenting time as a part of the guardianship order.

9. The next three years of the guardianship would be marked by continued litigation. During that time period the Court appointed, Mary Fondrisi, as guardian ad litem. This ongoing litigation culminated with a petition by GAL Fondrisi to suspend parenting time filed on April 3, 2009 with a hearing conducted on May 21, 2009 ….

10. This Court granted the petition to suspend parenting time not[]ing extensively the reasons in the order of May 22, 2009 including Father's arrest for possession of a controlled substance; ten residences since December 2007, and limited and inappropriate interaction by Father in B.R.'s long term medical needs.

11. While the order allowed supervised parenting time there is no record of any contact or parenting time between the Father or B.R. between the order of May 22, 2009 and the filing of the petition for adoption on October 25, 2010, a period of seventeen (17) months.

12. There were also no proceedings in the guardianship case whereby Father requested the resumption of his parenting time. The next filing by the Father was a letter of November 8, 2010 requesting records, copies of the petition and a continuance of any hearings as Father was then incarcerated in the Jackson County Jail.

13. The Court acknowledges considerable delay in bringing this petition for adoption to final hearing. Much of the delay is attributable to Father's efforts to secure counsel (Court eventually appointed counsel) and continued instability in Father's life.

14. B.R. appeared at the hearing on April 14, 2014 and being fourteen years of age expressed his desire that the adoption be granted.

15. The Father has demonstrated continuous and significant instability in his life. That history is extensively set out in the guardianship and has continued since documented by the Court in the May 22, 2009 guardianship order. It is during this time that B.R.'s siblings were found to be children in need of services. During this time Father has had additional arrests and periods of incarceration.

16. Father has not executed consent to the proposed adoption.

17. The issue before the Court is whether there is sufficient evidence to find that the Father's consent is not required.

18. I.C. 31-19-9-8(a) provides in part that consent to an adoption is not required when:

> A. Parent of a child in custody of another person if for a period of at least (1) year the parent: (a) fails without justifiable cause to communicate significantly with the child when able to do so; or (b) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

19. Payment or non-payment of support is a separate basis for termination of parental rights and is irrelevant to the issue of communication.

20. For the entire history of the guardianship and adoption proceedings, the Father paid no child support. There had also been no meaningful contact with B.R. after May, 2009.

21. The Father was under no child support order although a parent continues to have a legal duty to support children. However this factor is not the essential factor upon which the question of dispensing with Father's consent rests.

22. The issue before the Court is whether Father failed, without justifiable cause for a period of one year to communicate significantly

with [h]is child when able to do so.

23. There is no question of reluctance by the co-petitioners to allow visits or communication by the Father with B.R. existed.

24. This reluctance did not translate into an outright denial by co-petitioners. There were genuine safety concerns given the events leading up to May 2009 which safety concerns have continued to the present date.

25. Father took no steps in this seventeen (17) month period before the petition to adoption to pursue and enforce his supervised parenting time rights.

26. Father provided no gifts or cards to B.R.

27. By clear and convincing evidence, Father did no[t] significantly communicate with B.R. from May, 2009 up to the filing of this proceeding in October, 2010. Further there has been no significant communication since that time.

28. The second part of that test is did Father have the ability to communicate with B.R. and this translates to the fundamental question of whether co-petitioners thwarted that ability such that no action taken by Father could have prevailed to allow his communication.

29. While there has been conflict between D.S. and Father, there is no significant or credible evidence of that conflict between Father and Grandmother.

30. Grandmother has not prevented communication between Father and B.R.

31. The Court finds by clear and convincing evidence that the actions by co-petitioner were not such as to prevent Father from having the ability to communicate.

32. Again, there is no evidence that Father ever sent birthday or Christmas cards or presents. These simple measures to maintain a line

of communication the Court finds to be significant.

33. Father undertook no steps to enforce his parenting time rights.

34. It is true that co-petitioners were not cooperative in facilitating the Father-Child relationship. There were many uncertainties and concerns given Father's substance abuse and criminal issues and B.R.'s health issues which explain that reluctance. However the Court does not find this constituted a block to Father's assertion of his rights.

35. There has been no significant communication, and in reality there has been almost no communication between Father and B.R. Co-Petitione[rs'] resistance to parenting time and communication were not such as to preclude the Father from communicating with the child.

36. The Court would comment on B.R.'s health needs. As stated he is quadriplegic and in need of constant care. Grandmother has dedicated her life to the care of this child and the care she has provided to B.R. has been exemplary. She is motivated only by her love for B.R.

37. The only concern that has been able to be expressed regarding Grandmother, has been her family and the ability to keep bad influences away from B.R. Unfortunately the compassion demonstrated by Grandmother has on occasion extended to other less than deserving family members. The Court finds that there is no evidence Grandmother has ever allowed this to affect or in any way diminish the quality of care provided to B.R.

38. The Court does have concerns about whether it is in B.R.'s best interest to grant the adoption as to D.S. The Court has significant concern about her ability to prevent and control less than desirable influences in the family on B.R. and his care. The Court understands and acknowledges that co-petitioner D.S. has been appropriate in her care to B.R. and has been of great assistance to co-petitioner Grandmother. However for the concerns expressed herein the Court finds that the co-petition for adoption as to D.S. fails and therefore the

Court denies the petition for adoption as to D.S. alone.[3]

39. There is ample evidence before the Court that B.R. would be well served by the granting of the petition for adoption by Grandmother, that is not the critical issue before the Court. The home study indicates that the adoption would be beneficial to B.R. and he is in a loving and caring home and that B.R. wants the adoption. His extensive medical needs are being met. The GAL recommends the adoption.

40. Co-Petitioner Grandmother has met her burden. The Court finds that the consent of the Father to the adoption of B.R. is not required as Father for at least one year has failed without justifiable cause to communicate significantly with the child when able to do so.

Appellant's App. at 8-14 (citations omitted). Father now appeals.

# Discussion and Decision

## Section 1 – The trial court did not clearly err in concluding that Father's consent to the adoption is not required.

Father first contends that the trial court erred in concluding that his consent to the adoption is not required. When reviewing an adoption order, "we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption." *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1194 (Ind. Ct. App. 2014), *trans. denied*. We will not disturb the trial court's ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id*. Where, as here, the trial court has made findings of fact and

---

[3] D.S. has not appealed this ruling.

conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). Factual findings are clearly erroneous where the record lacks any evidence or reasonable inferences to support them, and a judgment is clearly erroneous where it is unsupported by the findings and the conclusions based on those findings. *Id.*

[4] In an adoption proceeding, the petitioner must prove by clear and convincing evidence that a noncustodial parent's consent is not required for the adoption. *In re Adoption of M.S.*, 10 N.E.3d 1272, 1279 (Ind. Ct. App. 2014).

> In reviewing a judgment requiring proof by clear and convincing evidence, we may not impose our view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence. Further, we may not reweigh evidence or assess witness credibility.

*Id.* (citation omitted).

[5] Indiana Code Section 31-19-9-8 reads, in pertinent part,

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> …
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

To the extent that Father challenges the trial court's findings regarding his nonpayment of support, we first note that paragraph (a)(2) of the statute is disjunctive, and thus either subparagraph provides grounds for dispensing with parental consent. *In re Adoption of B.R.*, 877 N.E.2d 217, 218 (Ind. Ct. App. 2007). We also note that the trial court took into account that Father was not under a child support order; made a general observation that parents nonetheless have a legal duty to support children; and emphasized that Father's nonpayment of support "is not the essential factor upon which the question dispensing with Father's consent rests." Appellant's App. at 11.

The trial court's decision rested on Father's lack of significant communication with B.R. for at least one year. The test for communication is not whether the noncustodial parent had *no* communication with the child, but whether he failed without justifiable cause to have *significant* communication when able to do so. *In re Adoption of S.W.*, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). "[T]he purpose of this statutory provision is to foster and maintain communication between non-custodial parents and their children, not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents' efforts to provide a settled environment to the child." *Id*. (citation and quotation marks omitted). "[A] parent's conduct *after* the petition to adopt was

filed is wholly irrelevant to the determination of whether the parent failed to significantly communicate with the child for any one year period." *Id.* at n.3 (citation and quotation marks omitted).[4]

[8] As mentioned above, the trial court found that there was "no record of any contact or parenting time between the Father or B.R. between … May 22, 2009 and the filing of the petition for adoption on October 25, 2010, a period of seventeen (17) months." Appellant's App. at 10. Although it is true, as Father asserts, that Grandmother and D.S. "never clearly stated in their testimony" that he failed to contact B.R. from May 2009 until October 2010, Appellant's Br. at 13, the evidence and inferences favorable to the trial court's decision clearly and convincingly establish this. Grandmother notes that Father's visits "after May of 2009 would have had to be at [her] residence supervised by [her]" and asserts that "[e]ven if any visits occurred after May of 2009 it is reasonable to infer from the record that they were short, sporadic and without significance." Appellee's Br. at 24. We agree. B.R.'s nurse, who has cared for him ten hours a day four days a week since 2008, testified that she saw "a couple of visits" between Father and B.R. in 2008 but did not "remember [B.R.] telling [her] really anything about visiting with his father" after "sometime in 2009." Tr. at 136. Father complains that she did not "state a particular date." Appellant's Br. at 13. Given that Father's parenting time was suspended in

---

[4] Consequently, we do not address the parties' arguments regarding events that occurred after Grandmother filed the adoption petition in October 2010, such as Father's attempts to reestablish parenting time with B.R. and the parties' encounter at a basketball game in 2012.

May 2009, it is reasonable to infer that his communication with B.R. decreased significantly at that point and remained minimal at best until the adoption petition was filed over one year later in October 2010.

[9] Father claims that he "never stopped trying to contact" B.R. and "regularly attempted to send cards or packages" to him, Appellant's Br. at 14, but the trial court was entitled to disbelieve this self-serving testimony. The court was also entitled to weigh and credit the conflicting testimony regarding whether and to what extent Grandmother and/or D.S. might have thwarted Father's ability to communicate with B.R.; we may not second-guess its determination in this regard.[5] Father's arguments are merely invitations to reweigh evidence and assess witness credibility, which we may not do. Based on the evidence and inferences favorable to the trial court's decision, we hold that the court did not clearly err in concluding that Father failed without justifiable cause to communicate significantly with B.R. when able to do so for a period of at least one year and therefore his consent to the adoption is not required.

---

[5] Father cites no authority for his argument that Grandmother's and D.S.'s actions "should be measured against the provisions of the Indiana Parenting Time Guidelines." Appellant's Br. at 16. Therefore, this argument is waived. *See Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 995 (Ind. 2014) (finding argument waived because of failure to cite authority).

## Section 2 – The trial court did not clearly err in concluding that the adoption is in B.R.'s best interest.

"Even if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests." *M.S.*, 10 N.E.3d at 1281 (citing Ind. Code § 31-19-11-1(a)(1)).

> The adoption statute does not provide guidance for which factors to consider when determining the best interests of a child in an adoption proceeding, but we have noted that there are strong similarities between the adoption statute and the termination of parental rights statute in this respect. In termination cases, we have held that the trial court is required to look to the totality of the evidence to determine the best interests of a child. Relevant factors include, among others, a parent's historical and current inability to provide a suitable environment for the child; the recommendations of the child's case worker or guardian ad litem; and the child's need for permanence and stability.

*Id*. (citations omitted).

Father does not challenge the trial court's findings regarding his substance abuse, history of arrests and incarceration, "limited and inappropriate interaction" in B.R.'s "long term medical needs," and "continuous and significant instability in his life." Appellant's App. at 10. Nor does he challenge the findings regarding B.R.'s "desire that the adoption be granted," his "extensive medical needs," and the "exemplary" care that Grandmother has

provided. Appellant's App. at 10, 13.[6] Instead, he cites evidence regarding Grandmother and D.S. and their home environment that was either disputed by various witnesses or discounted by the trial court as being stale or having no detrimental effect on the "quality of care provided to B.R." *Id.* at 13. Once again, we must decline Father's request to reweigh evidence and assess witness credibility in his favor. The totality of the evidence favorable to the trial court's decision supports the court's conclusion that the adoption is in B.R.'s best interest, and therefore we hold that this conclusion was not clearly erroneous. Consequently, we affirm the trial court's granting of Grandmother's petition to adopt B.R.

[12] Affirmed.

Friedlander, J., and Kirsch, J., concur.

---

[6] The trial court found that the guardian ad litem recommended the adoption. Lisa Garcia Reger was appointed as GAL for the adoption proceeding, and Father asserts that she did not recommend the adoption. When asked whether she recommended that Grandmother "continue to serve as guardian rather than adoptive mother," Reger replied, "Well, that's, it's not necessarily my recommendation[.]" Tr. at 112. Reger explained that she "kind of wanted to leave it up to the Judge" because "there's a legal issue […] on whether or not [Father's] consent's even required[.]" *Id.* She further stated,

> [I]f there's financial concerns one way for the court to monitor this situation would be if the guardianship continued at least somebody could be monitoring this whole money situation. And maybe, maybe somebody could be appointed to make sure that there is some estate planning done and to make sure that this trust fund is being managed appropriately.

*Id.* To the extent that Reger's recommendation was equivocal, we note that "[s]pecial findings, even if erroneous, do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision." *City of Gary v. Conat*, 810 N.E.2d 1112, 1115 (Ind. Ct. App. 2004). Such was the case here.